JODI LINKER
Federal Public Defender
Northern District of California
KAITLYN R. FRYZEK
Assistant Federal Public Defender
1301 Clay Street, Ste. 1350N
Oakland, CA 94612
Telephone: (510) 637-3500
Facsimile: (510) 637-3507
Email: kaitlyn_fryzek@fd.org

Counsel for Defendant Salter

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARLON SALTER,<br><br>Defendant. | **Case No.:** 26–CR–133 AMO<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE**<br><br>**Court:** Courtroom 5, 2nd Floor<br>**Hearing Date:** September 28, 2026<br>**Hearing Time:** 2:00 p.m. |

## INTRODUCTION

This case arises from a local federal law enforcement initiative referred to as “Operation Disarm.” The program seeks to made quick reductions in local gun violence by prescribing a surge in illegal firearm prosecutions in order to rapidly remove illegal firearm possessors from the community. A significant component of the Operation Disarm program is the waiver of pretrial release and a fast-track resolution of the case. In exchange for the defendant agreeing to waive their detention hearing—thus agreeing to remain out of the community milieu—and quickly indicating their desire to take responsibility, the government offers significant reductions in sentencing recommendations.

Marlon Salter has participated in the Operation Disarm program. He waived his detention hearing at the inception of this case, despite strong indication that he would be a good candidate for release,[1] and instead agreed to remain in custody and take responsibility within days after his federal arrest by accepting a proposed plea deal. As a result of his participation in the program, the government requests a fifty percent reduction from the low end of the guidelines, resulting in a recommendation of 26 months. Mr. Salter comes before the Court to be sentenced for a violation of 18 U.S.C. § 922(g)(1), possession of a firearm and ammunition by a felon, and joins in the government’s request for a sentence of 26 months imprisonment, followed by three years of supervised release. As noted by the Probation Officer, Mr. Salter’s personal history and characteristics mitigate in favor of a downward variance in his case. His participation in the Operation Disarm program, and his extraordinary acceptance of responsibility, further mitigate in favor of the jointly requested 26-month sentence. Such a sentence would be sufficient, but not greater than necessary, to comply with the sentencing goals set forth in 18 U.S.C. § 3553.

The parties and the Probation Officer agree on the guidelines in this case. The Total Offense Level is 23 and Mr. Salter is in Criminal History Category II, which yields an advisory sentencing range of 51 to 63 months imprisonment. The Probation Officer recognizes Mr. Salter’s background

[1] A pretrial interview was conducted and a report was written prior to Mr. Salter’s waiver of the detention hearing in this case, which recommended that Mr. Salter be granted pretrial release. He gave up the right to a hearing on his pretrial release and agreed to remain in custody in order to quickly resolve the case.

and personal characteristics that mitigate in favor of a downward variance and recommends 36 months. The Probation Officer's rationale for a variance is well-grounded; once the independent policy rationales of Operation Disarm are also considered, the jointly proposed 26-month sentence is well-justified and appropriately achieves the goals of sentencing.

**SENTENCING RECOMMENDATION**

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996) (quotations omitted)). Ultimately, the "overarching statutory charge for a district court is to 'impose a sentence sufficient but not greater than necessary'" to reflect the factors detailed in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quoting 18 U.S.C. § 3553(a)). The § 3553(a) factors assist the Court in fulfilling its mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). Against this backdrop, the Court must identify the *least amount of time necessary* to satisfy the objectives outlined in 18 U.S.C. § 3553(a). To be clear, every day of prison must be necessary under federal law.

Now 50 years old, Mr. Salter's early childhood was unstable and inconsistent. Both of his parents struggled with substance abuse; his father was often absent due to being incarcerated, and his mother became addicted to crack and prescription pills, often relying on government assistance for food and clothing. PSR ¶ 40. Mr. Salter experienced a number of traumatic events during childhood. When he was in the first or second grade, his mother was stabbed in the chest; he was in a nearby room when this stabbing occurred, and Mr. Salter recalled seeing blood all over the living room and running next door to call the police. *Id*. ¶ 50. When he was in elementary school, he recalls being aware that family members had been sexually assaulted. *Id*. Mr. Salter lost many family and friends to gun violence and stabbings, including the death of a beloved uncle who was stabbed when Mr. Salter was in the third or fourth grade. *Id*. Mr. Salter himself was shot three separate times in his early

adulthood. *Id*. ¶ 46.

Mr. Salter experienced further instability as a result of his parents' struggles. Around seventh grade, Mr. Salter went to live with his grandparents after he confronted his mother about her substance abuse and she kicked him out of her house. *Id*. ¶ 41. He lived with his grandparents, along with many of his aunts and uncles who were close in age to him, from seventh grade through high school. *Id*. During his high school years while living with his grandparents, the children would often get kicked out of the house, and at times Mr. Salter spent weeks or months sleeping in the car outside. *Id*. He began skipping classes and eventually ended up in jail, preventing him from graduating from high school. *Id*. The lack of family consistency in his youth along with his early traumatic experiences led to his involvement in the criminal legal system as a young adult.

Despite his troubled earlier years, as an older adult, Mr. Salter had largely turned his life in another direction. For over 10 years prior to this case, Mr. Salter remained arrest-free and a successful member of the community, helping to care for his disabled father and working different jobs, such as at Goodwill, as an off-loader for trucks at the Port of Oakland, and in home care for disabled children. *See* PSR ¶¶ 41; 56-58. Now 50 years old, Mr. Salter's last felony conviction was from an incident which occurred in April 2004, when Mr. Salter was just 27. *Id*. ¶¶ 26-30. His only other felony conviction was from 1994, when he was just 18 years old. *Id*. ¶ 26. Since age 27, he has sustained one other criminal conviction-- a misdemeanor DUI when he was 38 years old. *Id*. ¶ 30. He does not even have any other recent arrests. *Id*. ¶¶ 34-27. Mr. Salter is not the typical person to come before this Court for sentencing; he does not have an overly extensive criminal history, and before this case, he spent over a decade arrest-free.

Mr. Salter comes before this Court now largely as a result of a grief-fueled drug addiction. Despite his father's absence in early childhood, Mr. Salter developed a close bond with him later in adulthood. Around 2012, Mr. Salter's father experienced a series of strokes that left him partially paralyzed on his left side and wheelchair bound; for almost 12 years, Mr. Salter lived with his father and assisted with his everyday activities, until he passed away in June 2024. *Id*. ¶ 41. Mr. Salter's life took a hard turn after the recent death of his father. His father was like his best friend to him, and he never fully processed the grief of his loss. Instead, Mr. Salter developed a ravaging addiction to

heroin and cocaine for the first time when he was around age 48. *Id.* ¶ 52. While reeling from the loss of his father and falling further into his drug addiction, he fell in with the wrong crowd and became involved in the conduct that led to the instant case.

Mr. Salter has insight into his mental health and believes his downward spiral with substance abuse contributed to his involvement with the offense conduct. *Id.* ¶ 53. Fortunately, Mr. Salter recognizes the need for further treatment, including mental health and substance abuse counseling, to get back on the right track. *Id.* ¶¶ 51, 53. He says of his conduct in this case: "I feel ignorant for committing this offense. I know it wasn't right. I take full responsibility for my actions." *Id.* ¶ 11.

When Mr. Salter is doing well and is sober, he has the ability to deeply affect the lives of those around him. Mr. Salter is strongly committed to his family and has spent the past years serving as a positive influence and role model to others. His sister says of him:

> [Marlon has accepted] my foster and adopted children as they were born into our family. When my transgender (foster) son wanted to give up, Uncle Marlon coached him back to positivity and helped build confidence. When my adopted daughter felt like she wasn't good enough because her biological parents didn't choose her, he made sure to show her that she was chosen on purpose by our family. He has made the people in my home feel a sense of belonging and importance. PSR ¶ 44.

And in her letter of support to the Court, his niece writes the following:

> [My Uncle Marlon] is the patriarch of our family and has been our backbone for as long as I can remember. I grew up without a father to guide me as one should, but my uncle took the initiative that no man should have to take in place of another. He shaped me. Nurtured me. He is a catalyst for the woman I am today. This June, I was honored to graduate from UC Riverside with a Biology degree and walk the stage with my daughter. Exhibit A.

Despite his recent struggles, Mr. Salter has spent his past years creating lasting relationships with his family members and serving as a positive role model. His family is prepared to help support and guide him to stay on the right track once he is released from custody. *Id.*

Mr. Salter is a quiet but deeply caring man who, with the support of his family and the Probation Office, and his own commitments to getting back on the right track after his release from custody, will be a positive force in the community in the future. Taking into account his traumatic past, his unprocessed grief, his openness and willingness to participate in treatment, and his many years of

demonstrating that he can lead a law-abiding life prior to this case, a significant downward variance is warranted. The jointly-requested 26-month sentence, followed by a three-year term of supervised release, will fulfill the goals of sentencing.

Finally, there is a unique reason to follow the recommendation of the government in this case: Mr. Salter's participation in Operation Disarm. The instant case was filed as part of an initiative resulting from significant planning and consideration on the part of the government, and Mr. Salter then, upon arrest, agreed to participate in it. He took an extraordinary step towards accepting responsibility by indicating his desire to plead guilty within days of his federal arrest and also saved the government significant prosecution resources. The participation of the district courts in Operation Disarm at sentencing is crucial to the success of the program, as other potential participants must know that the government's recommendations will be given significant weight by the Court. The parties respectfully request that the Court effectuate the goals of sentencing by following the recommendation rooted in Operation Disarm, which advances the immediate protection of the community while providing a reduced prison sentence and a back-end of supervision. Effectuation of Operation Disarm is effectuation of the goals of sentencing, and it is the practical and just approach to this case.

**CONCLUSION**

Based on the foregoing, Mr. Salter respectfully requests that he be sentenced to 26 months of incarceration followed by three years of supervised release.

Dated: September 21, 2026

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

/S

KAITLYN R. FRYZEK
Assistant Federal Public Defender

# EXHIBIT A

September 18, 2026

Your Honor,

I'm writing to you with the hope that you will be able to see my uncle through my eyes.

My Uncle Marlon has exceeded the standards of any man that I have met. He is the patriarch of our family and has been our backbone for as long as I can remember. I grew up without a father to guide me as one should, but my uncle took the initiative that no man should have to take in place of another. He shaped me. Nurtured me. He is a catalyst for the woman I am today. This June, I was honored to graduate from UC Riverside with a Biology degree and walk the stage with my daughter. It was a beautiful day, but my Uncle Marlon, the man who played a crucial role in my success at this school, was unable to witness my accolade. This is a painful revelation. I can only pray that he can be here to experience the rest of our accomplishments and joy.

Our family has also taken initiative to make sure that my uncle returns to a stable and nurturing environment. He will have housing and immediate access to job boards that allow him to explore new career opportunities. Our main goal is for him to succeed as he has pushed us to do.

I pray this letter allowed you a small glimpse into how I see my uncle and how he has been a vital part in my survival and success. This a man who I perceive as loving, nurturing, and honorable. I pray you grant him grace and leniency.

Respectfully,

Jada Johnson